

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DONALD JEFFREY PAINTER, | § | Case No. 17-33009 |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |

**MEMORANDUM OPINION ON CHARLES RIVER ASSOCIATES' OBJECTION TO THE DEBTOR'S CLAIM OF EXEMPTIONS**
[This Relates to Doc. Nos. 55, 58, 97, 99, 104, 105]

## I. INTRODUCTION

On January 16, 2018, Charles River Associates ("CRA") filed an objection (the "Objection") to certain IRA accounts that Donald Jeffrey Painter (the "Debtor") claims as exempt.[1] [Doc. No. 55]. On February 5, 2018, the Debtor filed a response to the Objection (the "Response"). [Doc. No. 58]. On February 28, 2018, this Court held a hearing (the "Hearing") on the Objection and the Response. The only person to testify at the Hearing was the Debtor. The Court admitted exhibits 1, 7, 11, and 12 submitted by CRA and exhibits 1–10 submitted by the Debtor. After listening to the testimony, reviewing exhibits, and hearing closing arguments, the Court directed CRA and the Debtor to submit proposed findings of fact and conclusions of law. The Court also continued the Hearing to June 19, 2018. At the continued Hearing on June 19, 2018, the Court heard additional argument from the parties. At the conclusion of the Hearing, the Court requested additional briefing and continued the Hearing to August 10, 2018. At the August 10, 2018, Hearing the Court heard additional argument from counsel for CRA and counsel for the Debtor. At the conclusion of the Hearing on August 10, 2018, the Court took the matter under advisement.

---

[1] At the hearing on February 28, 2018, CRA clarified that the only IRA account that it is objecting to is the IRA account held by the Debtor at Chase Bank.

Pursuant to Federal Bankruptcy Rules 7052 and 9014,[2] the Court now issues these Findings of Fact and Conclusions of Law explaining its decision to overrule the Objection. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such; and to the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make additional findings and conclusions as it deems appropriate.

## II. FINDINGS OF FACT

1. The Debtor was employed by CRA from approximately July 22, 2015, to May 15, 2016.

2. Upon the termination of the Debtor's employment with CRA, CRA made a demand that the Debtor return a sum certain of money that CRA had previously given to the Debtor as a "forgivable loan."[3]

3. Subsequently, in August of 2016, CRA filed a civil lawsuit in Massachusetts state court to recover the funds related to the "forgivable loan" that the Debtor refused to return. This lawsuit was styled as *CRA International, Inc. v. Donald J. Painter*, Civil Action No. 16-2417 BLS 2 (the "State Court Action"). On September 26, 2016, the court in the State Court Action entered a "Stipulated Order Regarding Defendant's JP Morgan Chase & Co. Account" (the "Stipulated Order"). [CRA Ex. 1]. The Stipulated Order provides, in part, the following:

> Pursuant to Superior Court Rule 9A, Plaintiff CRA International, Inc. ("CRA") served a Motion for Attachment by Trustee Process of Defendant Donald J. Painter's ("[the Debtor]") bank accounts with JP Morgan Chase & Co. (the "Chase Account(s)") in an amount up to $933,550.68. Painter served an Opposition

---

[2] Hereinafter, any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure. Moreover, any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

[3] There was very little testimony at the Hearing regarding the "forgivable loan" that the Debtor allegedly owed CRA at the conclusion of his employment. Although the terms and conditions of the "forgivable loan" are unclear, what is clear is that upon the termination of his employment with CRA, CRA initiated a lawsuit against the Debtor, described in more detail above, to try and recover the funds related to the "forgivable loan."

2

pursuant to Rule 9A. The parties have resolved the issues raised in the Motion for Attachment, and are filing this Stipulated Order instead of the motion papers.

CRA hereby moves, and [the Debtor] hereby stipulates and consents, that the Court enter the following order concerning the Chase Account(s):

1. [The Debtor] represents to CRA and the Court that he currently has more than $1 million in the Chase Account(s).

2. Absent further order of this Court or by written agreement signed by the parties or their counsel, [the Debtor] is prohibited from withdrawing funds from the Chase Account(s) that would bring the collective balance of the Chase Account(s) below $750,000 or from otherwise allowing the collective balance of the Chase Account(s) to drop below $750,000.

[CRA Ex. 1]. The Stipulated Order was signed by counsel for both CRA and the Debtor, as well as by the judge in the State Court Action.

4. At the time of entering into the Stipulated Order, the Debtor held six accounts at Chase: (1) a checking account; (2) a savings account; (3) a brokerage account; (4) a business account; (5) a second business account; and (6) an IRA (the "Chase IRA") (all six of these accounts will hereinafter be collectively referred to as the "Chase Accounts"). The Chase IRA is a "managed" account. The Debtor testified that the term "Chase Account(s)," as it is defined in the Stipulated Order, included **all** of the Debtor's accounts at Chase, including the Chase IRA.

5. At the time of entering into the Stipulated Order, the collective amount in the Chase Accounts was approximately $1,534,000.00. Of this amount, approximately $634,000.00 was in the Chase IRA and the remainder of $900,000.00 was spread amongst the other accounts. Accordingly, at the time the Stipulated Order became effective, the Debtor had sufficient non-retirement account holdings to satisfy his obligation to maintain the minimum $750,000.00 balance in the Chase Accounts.

3

6. At some point after entering into the Stipulated Order and prior to the Petition Date, the Debtor transferred significant amounts from his Chase checking, savings, and brokerage accounts into accounts with Fidelity.

7. On or around April 11, 2017, judgment was entered against the Debtor in the amount of $1,007,104.44 in the State Court Action (the "Judgment"). [Claims Register, Claim No. 4-2].

8. On May 15, 2017, (the "Petition Date") the Debtor filed for bankruptcy under Chapter 7. In his Schedule C, the Debtor claimed the Chase IRA as exempt. [Doc. No. 13].

9. As of the Petition Date, there was approximately $760,300.00 in the Chase Accounts; of the $760,300.00, approximately $70,000.00 was comprised of non-IRA funds, thus making approximately $690,300.00 the total amount in the Chase IRA as of the Petition Date. Therefore, as of the Petition Date, in order to satisfy the requirement in the Stipulated Order that there be at least $750,000.00 in the Chase Accounts, the funds in the Chase IRA needed to be included to meet that requirement.

10. On September 12, 2017, CRA filed a claim in the amount of $1,007,104.44, related to the Judgment. [Claims Register, Claim No. 4-1]. CRA represented that this claim was a secured claim. [*Id.*]. On May 23, 2018, CRA filed an amended claim in the amount of $1,007,104.44 (again related to the Judgment); however, this time CRA represented that the claim was unsecured. [Claims Register, Claim No. 4-2].

11. Only the Debtor testified at the Hearing. There was no testimony from any representative of CRA.

4

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1. Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(B), and (b)(2)(O). This matter is core pursuant to § 157(b)(2)(A) because its resolution concerns the administration of this Chapter 7 estate. Here, CRA has objected to the Debtor's claim of exemptions. These circumstances fit within the "matters concerning the administration of the estate" category of 28 U.S.C. § 157(b)(2)(A). This matter is also core pursuant to 28 U.S.C. § 157(b)(2)(B) because it concerns the Debtor's claim of exemptions from property of the estate. Last, this matter is core pursuant to 28 U.S.C. § 157(b)(2)(O) because it involves the adjustment of the debtor-creditor relationship.

2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1) because the Debtor resided in the Southern District of Texas for the 180-day period immediately preceding the filing of the petition initiating the pending Chapter 7 case.

3. Constitutional Authority

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011),

5

this Court is required to determine whether it has the constitutional authority to enter a final order in any matter brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503. As already noted above, the pending matter before this Court is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), and (b)(2)(O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), or (b)(2)(O) is entirely different than a core proceeding under 28 U.S.C. § 157(b)(2)(C). *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein."), *cert. denied sub nom. Tanguy v. West.*, 134 S. Ct. 1002 (2014).

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under 28 U.S.C. § 157(b)(2), *see First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed

by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law, whereas, here, the dispute about the Debtor's claim of exemptions is governed solely by federal law—namely 26 U.S.C. §§ 408 and 4975 and judicially-created bankruptcy law interpreting these provisions. This Court is therefore constitutionally authorized to enter a final order on CRA's Objection. *See In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code—i.e., federal law—and no state law is involved).

Finally, in the alternative, this Court has the constitutional authority to enter a final order because the parties have consented to adjudication of this matter by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Indeed, counsel for both CRA and the Debtor expressly stated on the record that this Court has the constitutional authority to enter a final order on the Objection. [Doc. No. 107, June 19, 2018, Hrg. Tr. 41:21–42:2]. Further, CRA filed the Objection, [Doc. No. 55]; the Debtor filed the Response, [Doc. No. 58]; this Court held the Hearing on February 28, June 19, and August 10, 2018; the Debtor and CRA filed proposed findings of fact and conclusions of law, [Doc. Nos. 97, 99]; the Debtor and CRA filed supplemental briefing, [Doc. Nos. 104, 105]; and at no time did the Debtor or CRA ever object to this Court's constitutional authority to enter a final order on the Objection. If these circumstances do not constitute consent, nothing does.

For all of the reasons set forth above, this Court concludes that it has constitutional authority to enter a final order on the Objection lodged by CRA.

## B. Credibility of Witnesses

The Debtor was the only witness at the Hearing. The Court finds that his testimony was credible and therefore gives it substantial weight.

## C. Exemptions and Burden of Proof Regarding Objections to a Debtor's Claim of Exemptions

Generally, a debtor may claim as exempt monies held in an IRA. *See* 11 U.S.C. § 522(b)(1), (b)(3)(C) (emphasis added) ("Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection . . . . Property listed in this paragraph is . . . retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, **408**, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."). Once a debtor claims property as exempt, there is a presumption that the exemption has been correctly claimed. *Pequeno v. Schmidt*, 307 B.R. 568, 584 (S.D. Tex. 2004) (citing *Sherk v. Tex. Bankrs Life & Loan Ins. Co. (In re Sherk)*, 918 F.2d 1170, (5th Cir. 1990)), *aff'd* 126 F. App'x 158 (5th Cir. 2005). Thus, "any party contesting the exemption has the burden to show that it was improperly claimed." *Pequeno*, 307 B.R. at 584 (S.D. Tex. 2004); *see also* Fed. R. Bankr. Pro 4003(c) ("[T]he objecting party has the burden of proving that the exemptions are not properly claimed."). A party objecting to an exemption "must establish that the exemption is improper by a preponderance of the evidence." *Fehmel v. Union State Bank (In re Fehmel)*, 372 F. App'x 507, 511 (5th Cir. 2010) (quoting *In re Presto*, 376 B.R. 554, 563 (Bankr. S.D. Tex. 2007)). The burden shifting framework created by Bankruptcy Rule 4003(c) has been described as follows:

8

> A claimed exemption is presumptively valid . . . . Once an exemption has been claimed, it is the objecting party's burden . . . to prove that the exemption is not properly claimed. Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. The burden of persuasion, however, always remains with the objecting party.

*In re Fehmel*, 372 F. App'x at 511 (quoting *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)). Under both federal and state law, exemptions are to be liberally construed in favor of the debtor who claims the exemption. *See Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1068 (5th Cir. 2008); *In re Gandy*, 327 B.R. 807, 808 (Bankr. S.D. Tex. 2005).

As noted above, subject to certain exceptions, a debtor may claim as exempt monies held in an IRA, which are exempt from taxation pursuant to 26 U.S.C. § 408. *See* 11 U.S.C. § 522(b)(1), (b)(3)(C). CRA argues that the Chase IRA has lost the exempt status conferred on it by § 408.

### D. § 408(e)(2) Arguments

CRA first argues that the Chase IRA is not exempt pursuant to 26 U.S.C. § 408(e)(2). For an IRA to lose its exempt status under § 408(e)(2), a debtor must have engaged in a transaction prohibited by 26 U.S.C. § 4975. "Prohibited transactions," as defined in § 4975, must involve a "disqualified person." 26 U.S.C. § 4975(e)(2) defines "disqualified person" as a person who is, among other things, a "fiduciary." 26 U.S.C. § 4975(e)(3) goes on to define "fiduciary" as "**any person who**":

> (A) exercises any discretionary authority or discretionary control respecting management of such plan or **exercises any authority or control respecting** management or **disposition of its assets**,
>
> (B) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

9

> (C) has any discretionary authority or discretionary responsibility in the administration of such plan.

26 U.S.C. § 4975(e)(3) (emphasis added).

CRA argues that the mere fact that the Debtor holds an IRA account makes the Debtor a fiduciary; stated differently—according to CRA—all IRA holders are fiduciaries as defined by 26 U.S.C. § 4975(e)(3). The Court does not believe that 26 U.S.C. § 4975(e)(3) is quite so broad. The mere fact that the Debtor holds an IRA account does not automatically make him a fiduciary. *See, e.g., In re Goldstein*, No. 11-03210-8-RDD, 2011 WL 5909626, at *3 (E.D.N.C. Sept. 23, 2011) ("Generally the account holder of an IRA is not a disqualified person unless he or she acts as a fiduciary to the account."); John B. Atkins, *Individual Retirement Accounts and Prohibited Transactions*, May/June 2011 ABA Prob. & Prop. 34 ("IRAs generally are separated into three categories: (1) managed or trusteed accounts, (2) self-directed or custodial accounts, and (3) directed trustee accounts. For a managed IRA account, the trustee exercises management and discretion over IRA assets such that the trustee is considered to be the fiduciary. When the IRA is a self-directed, custodial account, the IRA owner is managing the IRA, although a custodian would be named to hold the IRA assets. In this case, the IRA owner is the fiduciary . . . . .").

The Debtor testified that the Chase IRA is a managed account and CRA has presented no evidence to the contrary. Where, as here, there is no evidence that a debtor has any level of control over the investment of the funds in the debtor's IRA, then the debtor is not a fiduciary. *See In re Goldstein*, No. 11-03210-8-RDD, 2011 WL 5909626, at *3 (E.D.N.C. Sept. 23, 2011) (finding that the debtor was not a fiduciary—and thus no prohibited transaction occurred—when the evidence showed that the debtor's IRA account was managed by professionals and there was no evidence that the debtor had any level of control over the investment of the funds in his IRA). Here, like in *In re Goldstein*, the Debtor testified that his Chase IRA is a managed account; that is,

10

the Chase IRA is managed by professionals, and not by the Debtor himself. [Doc. No. 81, Feb. 28, 2018, Hrg. Tr. 16:19–17:22]. CRA did not meet its burden in showing that the Debtor has any level of control over the investments of funds in the Chase IRA. Thus, the Debtor does not qualify as a "fiduciary" as that term is defined in 26 U.S.C. § 4975(e)(3).

The Court is not persuaded by the cases that CRA cites in support of its argument. CRA relies on *In re Meredith*, No. 03-34018-DOT, 2005 Bankr. LEXIS 2798 (Bankr. E.D. Va. May 19, 2005), *In re Roberts*, 326 B.R. 424 (Bankr. S.D. Ohio 2004), *In re Kellerman*, 531 B.R. 219 (Bankr. E.D. Ark. 2015), *In re Hughes*, 293 B.R. 528 (Bankr. M.D. Fla. 2003), *Nu-Way Energy Corp. v. Delp*, 205 S.W.3d 667 (Tex. App.—Waco 2006, pet. denied), *Harris v. Comm'r*, 106 T.C.M. 1994-22 (1994), *Yoshioka v. Charles Schwab Corp.*, No. C-11-1625-EMC, 2012 WL 5932817 (N.D. Cal. Nov. 27, 2012), *Swanson v. C.I.R.*, 106 T.C. 76, 88 n.13 (1996), *Res-Ga Gold, LLC v. Cherwenka (In re Cherwenka)*, 508 B.R. 228 (Bankr. N.D. Ga. 2014), *In re Thiem*, 443 B.R. 832 (Bankr. D. Ariz. 2011), and *In re Hipple*, 225 B.R. 808 (Bankr. N.D. Ga. 1996). *In re Meredith* is distinguishable because the debtor in that case actually exercised discretionary authority and/or control over the assets in his SEP-IRA, e.g., he used his SEP-IRA to purchase real property. 2005 Bankr. LEXIS 2798 at *3. As discussed above, the evidence in this case shows that the Chase IRA is a managed IRA and there has been no evidence introduced or testimony adduced that the Debtor has used his IRA assets like the debtor did in *In re Meredith*. The Court does not find *In re Roberts* persuasive, as the court in that case does not analyze or discuss § 408(e)(2) or whether the debtors in that case engaged in a "prohibited transaction" or whether they were "fiduciaries"; similarly, the court in *In re Thiem* does not discuss or analyze whether the debtor was a "fiduciary." *In re Kellerman*, *In re Cherwenka*, and *In re Hipple* do not apply here because the IRAs in those cases were self-directed. 531 B.R. at 220; 508 B.R. at 232; 225 B.R. at

11

810. *In re Hughes* is inapposite because the debtor there actually lent money from his IRA to his corporation, 293 B.R. at 530, and, similarly, *Nu-Way Energy Corp.* is not persuasive because the debtor used funds from his IRA to purchase a secured claim and obtain a release of a personal guaranty, 205 S.W.3d at 672. The Court is also not persuaded by *Harris*. Although the judge in *Harris*, relying on House Conference Report 93–1280 (1974), 1974–3 C.B. 415, 501, found that "[s]ince the owner of an IRA account is considered a 'disqualified person,' . . . the conditions of section 4975 have been met," this Court believes that the judge in *Harris* mistakenly relies on the House Conference Report it cites for this proposition. In *Yoshioka*, the parties themselves agreed that defendants qualified as fiduciaries, and there was no real analysis from the court on this issue. 2012 WL 5932817 at *1. Last, in *Swanson*, the debtor was found to be a fiduciary because he actually exercised the right to direct his IRA's investments. 106 T.C. at 78, 88 n.13.

Because the Debtor is a not a fiduciary, CRA's arguments that the Chase IRA lost its exempt status by engaging in a prohibited transaction as defined in 26 U.S.C. § (c)(1)(B), (c)(1)(D), and/or (c)(1)(E) fail.

### E. § 408(e)(4) Argument

CRA next argues that the Chase IRA is not exempt pursuant to 26 U.S.C. § 408(e)(4). Section 408(e)(4) provides:

> Effect of pledging account as security.--If, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual.

CRA's argument that the Chase IRA is not exempt pursuant to § 408(e)(4) fails by the plain language of the statute. First, the Debtor has not used the Chase IRA as security for a loan. As noted in footnote 3, there was some testimony from the Debtor about a "forgivable loan" he received from CRA that served as the basis for the lawsuit in the State Court Action. However,

12

there was no testimony adduced or exhibits introduced that indicate that the Debtor used the Chase IRA as security for either the "forgivable loan" or any other loan.[4]

Second, CRA points to the language in the Stipulated Order and argues that the agreement for the balance of the Chase Accounts to not drop below $750,000.00 is a pledge of a security interest. This Court disagrees. The Court does agree, however, with counsel for CRA on the fact that the Stipulated Order was poorly drafted. [*See* Doc. No. 81, Feb. 29, 2018, Hrg. Tr. 6:15-17]. If CRA wanted to use the Stipulated Order as a means to obtain a lient on the Debtor's assets (i.e., the Chase Accounts), then the Stipulated Order needed to be drafted much more clearly and precisely in order to accomplish that goal. As drafted, it does not do so. Nowhere is there a conveyance of a security interest in the Stipulated Order, which is what is required.[5] *See In re Rowe*, 369 B.R. 73, 77 (Bankr. D. Ma. 2007) (explaining that in order to demonstrate a present intent to pledge the collateral, the document must contain "granting" language to find that the creditor holds a security interest; it is not sufficient to merely list the covered collateral in the document).

Third, even if the Debtor's use of the Chase IRA can be construed as a loan with an equitable lien under Massachusetts law,[6] CRA itself has filed a proof of claim, as amended, expressly stating under oath that CRA holds an unsecured debt. [Claims Register, Claim No. 4-

---

[4] It should also be noted that the Stipulated Order does not grant a security interest in any property of the Debtor.

[5] The Court also notes that the Sixth Circuit has held that an IRA does not lose its exempt status merely because the client relationship agreement grants a lien on the retirement funds to cover any potential. *See Daley v. Mostoller (In re Daley)*, 717 F.3d 506, 508–09 (6th Cir. 2013) (overturning bankruptcy court and district court and holding that debtor's IRA did not lose its exempt status when the debtor entered into a "Client Relationship Agreement" with Merrill Lynch which granted Merrill Lynch a lien on the retirement funds to cover any potential debts to Merrill Lynch when, in fact, the debtor never borrowed from the IRA and Merrill Lynch never extended credit to the debtor based on the existence of the IRA).

[6] CRA points to the language in the Stipulated Order and argues that this language gives CRA an equitable lien and cites the following cases in support of this argument: *Snyder v. Smith*, 185 Mass. 58, 69 N.E. 1089 (1904) and *In re Rare Coin Galleries of America, Inc. v. Vinick & Young*, 862 F.2d 896, 903 (1st Cir. 1988). The Court disagrees with this interpretation of the Stipulated Order.

2]. CRA cannot now take a contrary position to the amended proof of claim, or argue that even though it filed an amended proof of claim stating that it holds an unsecured debt, it does not really "mean it." For the above discussed reasons, CRA's argument that the Chase IRA lost its exempt status under § 408(e)(4) fails as well.

### IV. CONCLUSION

For the reasons set forth herein, the Court overrules the Objection. An order overruling the Objection will be entered simultaneously herewith.

Signed on this 5th day of December, 2018.

                                                   Jeff Bohm
                                                   United States Bankruptcy Judge